UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-11-H

WILLIAM SCHERZINGER                                                    PLAINTIFF

V.

MARK BOLTON, ET AL.                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, William Scherzinger, brought this action seeking recovery against Defendants in their individual and official capacities arising from an incident that occurred in the booking room of the Louisville/Jefferson County Metro Corrections facility ("Metro Corrections facility"). Plaintiff asserts a number of federal claims under 42 U.S.C. § 1983 and state law claims against the following Defendants: Louisville/Jefferson County Metro Government, Mark Bolton[1], Michelle Doane[2], William McFarland and Jason Burba. The Defendants still present in this action have separately moved for summary judgment on all claims. Presently, the Court addresses Defendants McFarland and Burba's ("Officer McFarland" and "Officer Burba") separate motions for summary judgment together as the same analyses applies similarly to both.

I.

This lawsuit stems from a relatively brief incident that occurred shortly after 3:00 p.m. on January 6, 2010 at the Metro Corrections facility. On that day, the Louisville Metro Police took Plaintiff into custody pursuant to a bench warrant at 1:00 p.m. It is not disputed that he was under the influence of alcohol at this time.

---

[1] Louisville/Jefferson County Metro Government and Mark Bolton have jointly filed a separate motion for summary judgment.

[2] Pursuant to Federal Rule of Civil Procedure 41, Plaintiff voluntarily dismissed all claims against Officer Doane with prejudice. ECF No. 24.

Upon arrival to the Louisville Metro Department of Corrections facility ("Metro Corrections facility") around 1:30 p.m., officers directed Plaintiff to sit in the booking area.  At 3:00 p.m., the corrections officers overseeing the booking area changed shifts.  On that day, Officers McFarland and Burba were second shift officers.  During this transition, the booking floor was described as backed-up, noisy and chaotic.  The parties have remarkably different accounts as to precisely what happened next.  A surveillance video taken from inside the booking room does little to clarify was happened.

Plaintiff alleges that shortly after the shift change, Officer McFarland told the detainees in the booking area to be quiet, shouting, "shut the fuck up."  Someone on the booking floor, though Plaintiff adamantly maintains it was not him, responded "you shut the fuck up."  Officer McFarland then asked who made the comment.  At that moment, Plaintiff raised his hand.  Plaintiff contends that he raised his hand only to ask to use the restroom.  He testifies that simultaneous to the moment he raised his hand, Officer McFarland grabbed him and Officer Burba began hitting him with a closed fist.  Right away, Officer Doane came over and began spraying mace at Plaintiff.  During the incident, he testifies that he never exchanged words with the Officers, and does not recall the Officers asking him to stand up and move to a holding cell.

Officers McFarland and Burba contend that upon arrival to the booking floor, the scene was loud and disruptive.  Officer McFarland made several loud announcements directing detainees on the booking floor to sit down and be quiet.  He denies using any profanity in the announcements.  Officers McFarland and Burba claim that in response, an inmate in the booking area yelled, "shut the fuck up."  When Officer McFarland asked who made the comment, Plaintiff raised his hand and the Officers perceived this as Plaintiff identifying himself as the person that made the comment.

Officers McFarland and Burba approached Plaintiff, who they recall was intoxicated and loud, and asked him to stand up and go to a holding cell.  They contend that Plaintiff said something intimating that if they wanted him to stand up, they would have to get him up.  The Officers then reached down to take Plaintiff's arms, but Plaintiff pulled Officer McFarland toward him and said, "if I get up I'll fucking fight you."  Allegedly, Plaintiff then started swinging his arms; he grabbed Officer McFarland by the face and attempted to strike Officer Burba.  Officer Burba responded by hitting the inmate with his fist a number of times.  Seconds later, Officer Doane approached and sprayed Plaintiff with mace.

Once subdued, the Officers handcuffed Plaintiff and escorted him to a holding cell.  A nurse cleaned Plaintiff's eyes and examined him for injuries.  After three hours in a holding cell, the officers released Plaintiff back to the booking floor to be processed into jail.

The parties do not dispute the events taking place shortly after the incident.  Command Officer Sergeant Darrell Goodlett ("Sgt. Goodlett") reviewed a video of the incident and found that the force used by the Officers was proper and justified pursuant to the Metro Correction facility's Use of Force policy.  During the incident, Officer McFarland knew that he was hit in the face, but was unsure of who hit him, either Officer Burba or Plaintiff.  After a review of the tape, Sgt. Goodlett advised Officer McFarland that Plaintiff intentionally grabbed Officer McFarland's face, and he recommended that Officer McFarland file a Uniform Citation charging Plaintiff with Assault III, assault of a police officer.  Officer McFarland states that it was Sgt. Goodlett who actually filled out the Uniform Citation; he just simply signed his name.  The Uniform Citation was completed and filed on the day of the incident, January 6, 2010.  Plaintiff spent fourteen days in incarceration due to this felony charge.  The Jefferson District Court later

dismissed the Assault III charge, but did not state the explicit reason for dismissal in the court record.[3]

Several months later, Plaintiff filed criminal charges of Assault IV and Official Misconduct against Officers McFarland and Burba. After a trial in Jefferson District Court Case No. 10-M-011343, the jury acquitted both Officers of the Assault IV charges. Additionally, the jury acquitted Officer Burba as to the Official Misconduct charge. Officer McFarland was found guilty of Official Misconduct and fined $100.

Following the incident, the Metro Corrections Department investigated the matter and terminated both Officers. After an appeal, the Officers participated in an arbitration hearing; the arbitrator sustained their grievances. The arbitrator concluded that neither Officer McFarland nor Officer Burba used excessive force, and therefore, should not have been discharged for their conduct during the incident in question. Both Officers were reinstated as corrections officers, though Officer McFarland was told not to report to work as he faced other grounds for termination. Officer McFarland is currently appealing that decision.

II.

Plaintiff has advanced federal and state law claims against Officers McFarland and Burba in both their official and individual capacities. Pursuant to 42 U.S.C. §1983, the federal claims allege violations of Plaintiff's Fourth, Eighth and Fourteenth Amendment rights. Plaintiff asserts state law claims of negligence, intentional and negligent infliction of emotional distress, battery, assault, false imprisonment, malicious prosecution and abuse of process.

---

[3] As a threshold issue, the Court dismisses the claims arising from the Assault III charge as to Officer Burba since had no involvement in the filing of the Uniform Citation against Plaintiff. As such, the focus of the false arrest, malicious prosecution and abuse of process claims will be the actions of Officer McFarland.

Officers McFarland and Burba move for summary judgment on all claims, which entitles a party to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of showing that no dispute exists as to any material fact or that the nonmoving party cannot prove an essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once accomplished, the nonmoving party can overcome summary judgment by controverting the moving party's arguments with specific facts. *Matsushita Electrical Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court need not accept unsupported or conclusory allegations. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). However, the Court will view the record evidence in the light most favorable to Plaintiff, the nonmoving party. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 339 (6th Cir. 2010).

The summary judgment analysis is somewhat different when a defendant raises the affirmative defense of qualified immunity:

> In ruling on a motion for summary judgment based on the defense of qualified immunity, the existence of a disputed, material fact does not *necessarily* preclude summary judgment. Even if there is a material fact in dispute, summary judgment is appropriate if the Court finds that–viewing the facts in the light most favorable to the plaintiff–the plaintiff has failed to establish a violation of clearly established constitutional law.

*Woosley v. City of Paris*, 591 F. Supp. 2d 913, 918 (E.D. Ky. 2008) (citing *Saucier v. Katz*, 533 U.S. 194 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)).

Plaintiff advances all the claims against Officers McFarland and Burba in their official capacities as Metro Corrections officers and individually. The Court will address the individual capacity claims first, and then evaluate the official capacity claims.

5

III.

Officers McFarland and Burba seek summary judgment on all individual capacity claims on the grounds that qualified immunity shields them from liability for any violation of an individual's federal and state rights.  The Court will separately address the federal and state law claims advanced, because the qualified immunity analysis and the claims asserted are slightly different under federal and state law.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."  *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1998)).  Neither party disputes that the Officers were acting under the color of law.

Concerning the first prong of a 42 U.S.C. § 1983 claim, "plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in that position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct."  *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004) (citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).  In this action, Plaintiff advances claims for excessive force, wrongful arrest and deliberate indifference. The sources of constitutional protection against such wrongs are found in the Fourth, Eighth and Fourteenth Amendments.   The Court will assess whether the Officers violated a clearly established right of Plaintiff secured by these Amendments in the following sections.

A.

Plaintiff claims that Officer McFarland and Burba violated his constitutional rights to be free from the use of excessive force and cruel and unusual punishment, as guaranteed by the

Fourth, Eighth and Fourteenth Amendments.  "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between."  *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Gravely v. Madden*, 142 F.3d 345, 348-49 (6th Cir. 1998)).

Though the Fourth and Eighth Amendments are "the two primary sources of constitutional protection against physically abusive governmental conduct," *Graham*, 490 U.S. at 394, for the reasons that follow, the Court finds that the Fourteenth Amendment governs these circumstances.  The scope of Fourth Amendment protection depends in part on whether the individual was arrested pursuant to a warrant or not.  Concerning the latter, the Fourth Amendment "protects pre-trial detainees arrested without a warrant through completion of their probable cause hearing."  *Aldini v. Johnson*, 609 F.3d 858, 860 (6th Cir. 2010).  As to those arrested pursuant to a warrant, the breadth of Fourth Amendment's protection is reduced, *see id.* at 867, n.8 and only lasts during the actual seizure of the individual.  *See Phelps*, 286 F.3d at 300 (holding that "the Fourth Amendment reasonableness standard governs throughout the seizure of a person: '[t]he seizure that occurs when a person is arrested continues throughout the time the person remains in custody of the arresting officer'") (quoting *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988)).  The Eighth Amendment protects those convicted of a crime from the infliction of cruel and unusual punishments.  *Id.* at 299.

During the incident at issue, Plaintiff was being held in the booking room pending completion of the booking process for an outstanding warrant, but after his arresting officer surrendered him to the Metro Corrections facility.  He had not been convicted of the offense for

which he had been arrested. *See* Complaint, ECF No. 1, ¶ 20. Therefore, neither the Fourth nor Eighth Amendment apply. *See Lanman v. Hinson*, 529 F.3d 673, 681 (6th Cir. 2008) (stating that when the Fourth and Eighth Amendment do not apply, the "more generally applicable Due Process Clause of the Fourteenth Amendment provides the individual with protection against physical abuse by officials").

The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to a punishment." *Graham*, 490 U.S. at 395 n.10. In deciding whether a constitutional violation has in fact occurred, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). If a court concludes that the officer's use of force was merely to punish the offender and did not serve some other legitimate governmental objective, the officer may have exercised excessive force in violation of the Fourteenth Amendment. *Id.* at 539 n.20. "Retribution and deterrence are not legitimate nonpunitive governmental objectives." *Id.*

In *Leary v. Livingston County*, Judge Clay further described the Fourteenth Amendment excessive force analysis as follows:

> The examination of the totality of the circumstances includes an inquiry into the alleged perpetrator's state of mind. The absence of a clear intent to punish, however, is not fatal to a detainee's § 1983 excessive force claim. Rather, absent a showing of an express intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the use of force may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it. An intent to punish a pretrial detainee may be inferred from the use of force in the absence of any penological justification.

528 F.3d 438, 451-52 (6th Cir. 2008) (Clay, J., dissenting) (internal quotations omitted).[4]

Plaintiff first argues that the force used was unreasonable because there was no need for the Officers to initiate force. He denies that he made threatening comments or gestures, or that he refused the Officers' instructions. He proffers testimony from several officers at the scene who state that on that day, Plaintiff was generally complicit, non-aggressive and posed no threat of harm. Even if the initiation of force was somehow justified, however, Plaintiff next argues that the force used was excessive. To support this argument, Plaintiff presents testimony from several witnesses, including veteran police officers, who indicate that the level of force used during the incident was excessive and unnecessary.

The Officers primarily justify their conduct by relying on the Metro Correction facility's Use of Force policy. Specifically, they highlight the policy's "one plus one" theory, which dictates the permissible amount of force that an officer may use in response to a given level of inmate resistance. As the level of inmate resistance increases, the level of force a corrections officer is permitted to use in response increases. The Officers maintain that their conduct during the incident was consistent with the explicit terms of the policy and, as such, they did not violate Plaintiff's constitutional right to be free from the use of excessive force.

Clearly, the parties' account of the events are remarkably different. After viewing the video, the Court cannot conclusively determine if one account is more accurate than the other. The poor image quality, camera angle and lack of audio, do not definitely corroborate either side's recitation of the facts. Nonetheless, the Court is concerned by the almost instantaneous application of force; the sequence of the events happened so rapidly that it is possible that Plaintiff had no chance to comply with any orders. Moreover, once Officer Burba began striking

---

[4] Although this except comes from the dissent, the Court finds the legal standard to be applicable, as the majority and dissent differed only on how the facts of that case applied to the law. *See Leary*, 528 F.3d at 452 ("The majority, however, finds that Plaintiff cannot establish a constitutional violation.").

Plaintiff with a closed fist, any perceived threat of safety was neutralized, so the subsequent strikes did not advance any penological objectives. Ostensibly, the repeated hard empty hand strikes appear to unjustifiably punish Plaintiff.[5]

Viewing the facts in the light most favorable to the Plaintiff, there are genuine issues of fact whether Officers McFarland and Burba's actions were intended to punish Plaintiff in violation of the Fourteenth Amendment's prohibition of excessive force. Consequently, the Officers are not entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 excessive force claims.

## B.

Next, the Court will address Plaintiff's wrongful arrest claim. Officer McFarland argues that Plaintiff's constitutional claim of wrongful arrest fails on the grounds that he had probable cause to file the Assault III charge.[6] To maintain a false arrest action under 42 U.S.C. § 1983, a plaintiff must prove that the police lacked probable cause to arrest the plaintiff. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). Probable cause is present if a "reasonably prudent person would believe that there is a fair probability that a suspect has committed, is committing, or intends to commit a crime. A police officer has qualified immunity from suit if the officer arguably had probable cause to arrest." *Woosley*, 591 F. Supp. 2d at 919 (internal citation and quotation omitted); *see Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) (holding that "[t]he validity of the arrest does not depend on whether the suspect actually committed the crime").

---

[5] The Court appreciates that "[i]mplicit in the qualified immunity doctrine is a recognition that police officers, acting reasonably, may err." *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004). Even if the Officers were mistaken as to whether and to what extent they should have initiated force, whether the Officers reasonably erred is unclear. In response to their claim that they followed the applicable Use of Force policy, the Court finds that Plaintiff has presented sufficient evidence to refute the allegation that he refused the Officers' instructions or was otherwise resistant. If so, the Officers cannot justify their immediate initiation of force because the incident presented no need to gain control.

[6] The Court notes that there are other elements involved in a constitutional wrongful arrest claim. However, the motions only discuss the element of probable cause. Accordingly, the Court will focus on this single argument presented by Officer McFarland.

The inquiry into probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest where supported by reasonably trustworthy information."  *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (internal quotations omitted).  In evaluating probable cause based upon an eyewitness account, the Sixth Circuit holds that

> [a]n eyewitness identification will constitute sufficient probable cause unless, at the time of arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.    This comports with the general notion that, since eyewitness' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity.

*Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (internal quotations omitted).

Following the incident, Officer McFarland stated that he knew someone had grabbed his face; however, he testified that he "wasn't sure who had hit me."  McFarland Depo., ECF No. 37-8, p. 78:24.  He stated that he filed the Assault III charge at the insistence of his commanding officer, Sgt. Goodlett.  After reviewing the video of the incident, Sgt. Goodlett came to the conclusion that Plaintiff had grabbed Officer McFarland's face during the incident, and this constituted assault against Officer McFarland.  Sgt. Goodlett then completed the Uniform Citation for Officer McFarland to sign.  In sum, Officer McFarland contends that he acted reasonably, in good faith and with probable cause in signing the Uniform Citation upon the advice of his commanding officer.

Plaintiff argues that Officer McFarland did not have sufficient probable cause to support an Assault III charge because of Sgt. Goodlett's lack of credibility and that Officer McFarland knew at the time he filed the Assault II charge that Plaintiff had not assaulted him.  Plaintiff primarily relies on testimony from Sgt. DeJarnette who stated that during the altercation, Officer

McFarland "actually made the statement 'Burba that's me you're hitting in the face.'" DeJarnette Depo., ECF No. 47-2, p. 8:11.  Additionally, Plaintiff relies on other witnesses who stated that Plaintiff never grabbed or struck Officer McFarland.

Sgt. Goodlett did not witness the incident firsthand and, admittedly, his video review of the incident may not be the kind of eyewitness testimony that is typically used to buttress a finding of probable cause.  *See Ahlers*, 188 F.3d at 370 (noting that because "eyewitnesses' statements are based on *firsthand* observations, they are generally entitled to the presumption of reliability and veracity") (emphasis added).  However, he unequivocally affirmed to Officer McFarland that Plaintiff had grabbed his face and strongly insisted that Officer McFarland file the Uniform Citation.  Officer McFarland had no reason to doubt Sgt. Goodlett's account or think that he was lying or mistaken.  Therefore, the Court finds that Officer McFarland reasonably believed his supervising commanding officer in that probable cause existed to file the charge against Plaintiff.  *See Henry v. United States*, 361 U.S. 98, 102 ("Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.").  Sgt. DeJarnette's testimony does not necessarily contradict this finding; even if Officer McFarland acknowledged that Officer Burba mistakenly punched him, Plaintiff could also have been the source of strikes to Officer McFarland.

Plaintiff has not alleged sufficient facts which, when viewed in the light most favorable to him, demonstrate that Officer McFarland violated a clearly established constitutional right.  At the time Officer McFarland signed the Uniform Citation, he reasonably believed that Plaintiff grabbed his face, and as such, probable cause was present.  Therefore, Plaintiff's wrongful arrest claim fails as a matter of law.

C.

The Court will now address Plaintiff's claim that Officers McFarland and Burba were "deliberately indifferent" to his serious medical needs subsequent to the incident on the booking floor.[7]  To establish a claim under the Eighth Amendment for deliberate indifference to a serious medical need, an inmate must satisfy both an objective and subjective prong.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff has failed to establish the objective prong of this inquiry, which requires the existence of a "sufficiently serious" medical need.  *Id.*  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)).  By his own account, Plaintiff received medical attention shortly after the incident to treat his eyes for mace and the officials attended to any other physical injury he sustained from the altercation.  Nothing in the record indicates that Plaintiff ever requested or was denied medical care at the jail for any injury stemming from the incident.  Because Plaintiff cannot sustain his burden of proving the objective prong in the deliberate indifference analysis, the Court need not address the subjective prong.  Consequently, Plaintiff's 42 U.S.C. § 1983 deliberate indifference claim predicated on the Fourteenth Amendment fails as a matter of law.

---

[7] Deliberate indifferent claims are primarily brought under the Eighth Amendment for convicted inmates and the Fourteenth Amendment for pretrial detainees.  As discussed above, at the time of the incident, and immediately thereafter, Plaintiff was a pretrial detainee.  However, the Eighth Amendment's deliberate indifference standard is the same as the Fourteenth Amendment, so the Court will cite to cases that evaluate the claims under either constitutional predicate.  *See Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) ("The Eighth Amendment, by its terms, applies only to post-conviction inmates.  Pretrial detainees, however, are guaranteed the equivalent right to adequate medical treatment by the Due Process Clause of the Fourteenth Amendment, and are subject to the same deliberate indifference standard of care.").

IV.

Next, the Court will address Plaintiff's state law claims.  Officers McFarland and Burba primarily argue that qualified immunity absolves them from all the state tort claims brought against them in their individual capacities.

In Kentucky, public employees, including corrections officers, are entitled to qualified immunity from tort liability for "good faith judgment calls made in a legally uncertain environment."  *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2004).  Officers McFarland and Burba enjoy qualified official immunity for (1) discretionary acts (2) performed in good faith and (3) within their scope of authority.  *Id.*

In Kentucky, a discretionary act is one that

> require[s] the exercise of reason in the adaptation of a means to an end, and discretion in determining how or whether the act shall be done or the course pursued.  Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which it shall be performed.

*Upchurch v. Clinton Cnty.*, 330 S.W.2d 428, 430 (Ky. 1959).  Metro Correction officers are given directives, which tends to cast their conduct as ministerial.  Nonetheless, the decision to administer force in an effort to maintain order and control in the facility is a discretionary act.  Whether it is justified or not goes to the good faith prong of the qualified immunity analysis.  Additionally, the Court is satisfied that the Officers have met the third element of the state law qualified immunity analysis, as they were acting within the scope of their authority as corrections officers during the incident at issue.

Therefore, the remaining issue is whether they performed the actions in good faith.  Plaintiff bears the burden in this respect to prove that the Officers did not perform the discretionary act in good faith.  *Yanero*, 65 S.W.3d at 523.  "Bad faith exists if either a public

14

employee violated a constitutional, statutory, or other clearly established right of which a reasonable person would have known or if the public employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Woosley*, 591 F. Supp. 2d at 922 (internal quotation omitted).  The Court will now determine whether the Officers acted in good faith with respect to each state tort claim.[8]

### A.

The Court first addresses Plaintiff's assault and battery claims against Officers McFarland and Burba.  Kentucky tort law establishes that "[a]ssault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001).  It is clear that Officers McFarland and Burba engaged in unwanted touching.

However, the Kentucky legislature recognizes that in some circumstances, a police officer is privileged to use such force if necessary.  *See* KRS § 503.090.  Generally, "[p]olice officers have a privilege to use reasonably necessary force to preserve order." *Woosley*, 591 F. Supp. 2d at 923.  As determined above, the Court is unable to conclusively determine whether Officers McFarland and Burba used excessive force, such that Plaintiff's constitutional rights were violated.  Accordingly, the Officers are not entitled to qualified immunity, and these claims will survive summary judgment.

### B.

In Plaintiff's negligence per se[9] count, he cites the following statutes as a basis for the claim: (1) KRS § 508.010 assault in the first degree; (2) KRS § 508.020 assault in the second

---

[8] Some claims are more easily dismissed because Plaintiff fails to make out the claim as a matter of law.  In such instances, the Court need not perform a qualified immunity analysis.

[9] In Kentucky, negligence per se "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. Ct. App. 2008).

degree; (3) KRS § 508.030 assault in the fourth degree; (4) KRS § 522.020 official misconduct in the first degree; and (5) KRS § 522.030 official misconduct in the second degree. "[I]f the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive, he acted in bad faith." *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 481 (Ky. 2006) (internal quotation omitted). As the Kentucky Supreme Court notes, "Cases are indeed rare where one admits an improper motive." *Id.* Instead,

> [a]s is most often the case, the establishment of "bad faith" occurs upon proof of a violation of a "clearly established right" of the plaintiff, which "a person in the public employee's position presumptively would have known was afforded to a person in the defendant's position, i.e., objective unreasonableness."

*Id.* (quoting *Yanero*, 65 S.W.3d at 523).

Officers McFarland and Burba maintain that they acted in an objectively reasonable manner in attempting to maintain control in the Metro Corrections facility, and that the force used against Plaintiff was consistent with the Use of Force policy. As such, they did not act in bad faith. However, as previously discussed, genuine issues of material fact remain as to whether Officers McFarland and Burba violated the Kentucky assault and battery statutes. With respect to the negligence per se actions involving official misconduct, it likely follows that an officer who commits assault and/or battery also violated the official misconduct statute. Consequently, the Court declines to grant summary judgment on Plaintiff's negligence per se claims against Officers McFarland and Burba in their individual capacities.[10]

---

[10] The Court does note the availability of other remedies from the traditional tort actions of battery and assault that stem from the same alleged violative conduct. Therefore, this negligence per se count appears to be duplicative to the assault and battery counts. However, this argument was not made in the briefing; with respect to the negligence per se claims, the parties solely focused on the presence, or lack thereof, of bad faith. The Court will therefore confine its analysis to the arguments presented by the parties.

C.

Next, the Court will address Plaintiff's claims for intentional and negligent infliction of emotional distress.  The claims are improper because they are duplicative to Plaintiff's other claims for which recovery of emotional distress is permitted.  *See Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 ("[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie.").  Therefore, the claims fail as a matter of law, and the Court dismisses them against all Defendants.

D.

Plaintiff brings two counts of false imprisonment: one based on the allegation that the Officers confined him to a restricted space during the incident, and the other based on the allegation that he was confined for a period of time due to the false arrest stemming from the Assault III charge.  Kentucky law recognizes a claim for false imprisonment where "(1) Defendant's act by force or threats of force against person or property (2) [w]hich with intent caused plaintiff to be confined to an area certain."  *Columbia Sussez Corp., Inc. v. Hay*, 627 S.W.2d 270, 278 (Ky. Ct. App. 1981).  For the reasons that follow, each of the false imprisonment claims fail.

The Court will first address Plaintiff's claim of false imprisonment arising from his confinement to a restricted space during the incident.  At the time of the incident, Plaintiff was in custody pursuant to a warrant for his arrest, awaiting to be processed into jail.  Thus, prior to the incident, Plaintiff confinement was lawful and the incident itself did not change his captivity.[11]

---

[11] He was subsequently moved to a holding cell for a three-hour period, but Plaintiff's Complaint explicitly defines the alleged period of confinement as limited to the actual incident.  *See* Complaint, ECF No. 1, ¶ 60 ("Defendant McFarland, Burba . . . confined Plaintiff Scherzinger to a restricted space during their aforementioned assault and/or

Plaintiff fails to sustain a claim for false imprisonment during the course of the incident, and as such, the Officers are entitled to qualified immunity because they did not violate Plaintiff's rights.

The Court will next address Plaintiff's claim of false imprisonment stemming from his alleged false arrest and imprisonment on the Assault III charge. Kentucky courts recognize a distinction between claims of false imprisonment and malicious prosecution. "The former will lie only when the arrest or imprisonment is without legal authority. Where the arrest is made under authority of a valid process, the remedy is an action for malicious prosecution." *Rader v. Parks*, 258 S.W.2d 728, 729 (Ky. 1953). In *Radar*, the Kentucky Supreme Court further highlighted that

> [a]n action for false imprisonment may be maintained where the imprisonment is without legal authority. But, where there is a valid or apparently valid power to arrest, the remedy is by an action for malicious prosecution. The want of lawful authority is an essential element in an action for false imprisonment. Malice and want of probable cause are the essentials in an action for malicious prosecution.

*Id.* (internal quotation omitted). In the present action, an officer arrested Plaintiff pursuant to a valid arrest warrant. If Plaintiff alleges that he "ha[s] been falsely accused and the false accusation set in motion the events leading to his ultimate arrest and imprisonment, his sole remedy [is] an action for malicious prosecution." *Id.* For that reason, Plaintiff's false imprisonment claim based on the Assault III charge also fails.

### E.

Next, the Court will evaluate Plaintiff's malicious prosecution claim against Officer McFarland. In Kentucky, a plaintiff must prove the following six elements to maintain an action for malicious prosecution: "(1) the institution or continuation of original judicial proceedings,

---

battery of him.").

either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damages as a result of the proceeding." *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981). Since "the tort of malicious prosecution is not one that has been favored in the law . . . one claiming malicious prosecution must strictly comply with the elements of the tort." *Kennedy v. City of Villa Hills*, 2009 WL 3112126, *9 (E.D. Ky. Sept. 23, 2009) (internal quotations omitted). In section III of this opinion, the Court found that Officer McFarland reasonably believed that probable cause existed to file the Uniform Citation Assault III charge against Plaintiff. That finding is fatal to Plaintiff's malicious prosecution claim as he cannot sustain his burden as to the fifth element. Therefore, the Court dismisses Plaintiff's malicious prosecution claim.

F.

Under Kentucky law, an abuse of process claim provides compensation for an injury resulting from "the irregular or wrongful employment of a judicial proceeding." *Stoll Oil Refining Co. v. Pierce*, 337 S.W.3d 263, 266 (Ky. 1960); *see Kennedy*, 2009 WL 3112126, at *10 ("Although seemingly similar to malicious prosecution, abuse of process differs from malicious prosecution in that malicious prosecution consists of commencing an action or causing process to issue maliciously or without justification while abuse of process entails the employment of legal process for some other purpose than that which it was intended by the law to effect.") (internal quotation omitted). An abuse of process claim has the following elements: "(1) an ulterior purpose and (2) a willful act in the use of that process not proper in the regular conduct of the proceeding." *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998). "To prove

19

the existence of an ulterior purpose, a plaintiff must do more than demonstrate that the defense possessed a bad intention when instituting the underlying action; to sustain a claim of abuse of process, a plaintiff is required to show that the defendant attempted to use the [prior] proceeding as a means to secure a collateral advantage."   *Kennedy*, 2009 WL 3112126, *10 (internal quotations omitted).

Here, Plaintiff has failed to show that Officer McFarland used the judicial process improperly.  He does not allege that Officer McFarland attempted to secure collateral advantage in his pursuit of the Assault III charge.  *See Simpson*, 962 S.W.2d at 395 (holding that "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even if [the court] assume[s] *arguendo* bad intentions").   As such, Plaintiff's abuse of process claim fails as a matter of law.

V.

Officers McFarland and Burba argue that the Eleventh Amendment and governmental sovereign immunity bar all claims asserted against them in their official capacities as corrections officers employed at the Louisville Metro Department of Corrections.  The Court will address the Officers' official capacity claims under federal and state law separately, as the analysis is different between the two schemes.[12]

---

[12] As this Court has previously stated, "[t]he breadth of the Eleventh Amendment's protection of state governments and agencies from suit under federal law determines the result.  This is an entirely different question than the extent of the immunity Kentucky state common law extends to its own governmental agencies from suit under state law." *Meredith v. Jefferson Cnty. Bd. of Educ.*, 2007 WL 3342258, *2 (W.D. Ky. Nov. 9, 2007).  "Kentucky state courts concede that 'state treatment of sovereign immunity is not relevant to a determination of whether a party is immune from § 1983 liability because only federal jurisprudence is controlling on this issue.'" *Id.* at *3 n.3 (quoting *Jefferson Cnty. Fiscal Court v. Peerce*, 132 S.W. 3d 824, 836 (Ky. 2004)).

A.

Plaintiff brings suit against Officers McFarland and Burba in their official capacities as corrections officers who are employees of Louisville/Jefferson County Metro Government, a co-Defendant in this case. *See* Complaint, ECF No. 1, ¶ 4-5. "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' a person sued in his official capacity stands in the shoes of the entity he represents." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)); *see Matthews v. Johnson*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the government entity.").

State entities enjoy Eleventh Amendment immunity from actions that assert a violation of federal civil rights. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). However, this immunity extends to agencies acting as arms of the state, and not to cities, counties or other political subdivisions. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *see Peerce*, 132 S.W.3d at 837 ("The United States Supreme Court, 'has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a slice of state power.'") (quoting *Lake Cnty. Estates v. Tahoe Planning Agency*, 440 U.S. 391, 401 (1979)).

"It is well established that a municipality, such as [Louisville/Jefferson County Metro Government] may be held liable under 42 U.S.C. § 1983." *Livingston v. Louisville/Jefferson Cnty. Metro Gov.,* 2007 WL 634085, *2 (W.D. Ky. Feb. 27, 2007); *cf. Daleure v. Ky.*, 119 F. Supp. 2d 683, 687 (W.D. Ky. 2000). Thus, the Louisville/Jefferson County Metro Government does not enjoy Eleventh Amendment immunity because it is not considered an entity of the state.

21

Suing a municipal officer in his official capacity under 42 U.S.C. § 1983 is the same as suing the municipality itself, so the same immunity principles apply to Officers McFarland and Burba in their official capacities.  *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006).  In sum, Louisville/Jefferson County Metro Government, and Officers McFarland and Burba, are not entitled to immunity from Plaintiff's federal claims when sued in their official capacities.

Nevertheless, to assert a 42 U.S.C. § 1983 claim against a municipality, the Court must determine "(1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for the violation."  *State v. Elizabethtown Police Dep't*, 2010 WL 1196193, *2 (W.D. Ky. Mar. 23, 2010) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)).  In section III of this opinion discussing federal 42 U.S.C. § 1983 individual capacity claims, the Court found that several of Plaintiff's constitutional claims failed.  Those findings have implications for the official capacity claims, as the failure to make out a constitutional violation precludes Plaintiff from meeting the first prong of federal municipal liability.

As to the remaining constitutional claim of excessive force that survived dismissal, the Court will take up that claim as it pertains to Officers McFarland and Burba in their official capacities when the Court rules on Louisville/Jefferson County Metro Government's motion for summary judgment.  *See Wiley v. Chauvin*, 2009 WL 2244698, *3 (W.D. Ky. July 24, 2009); *Meredith,* 2007 WL 3342258, at *3.

## B.

In addition to the federal law claims brought under 42 U.S.C. § 1983, Plaintiff advances several state tort claims against Officers McFarland and Burba.  Unlike federal courts, Kentucky

courts recognize that "a county government is cloaked with sovereign immunity." *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003).

"[W]hen an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's . . . actions are afforded the same immunity, if any, to which the agency, itself, would be entitled." *Yanero*, 65 S.W.3d at 522. As Louisville/Jefferson County Metro Government employees, Officers McFarland and Burba are performing governmental functions and are entitled to immunity. Accordingly, the state law claims asserted against them in their official capacity must be dismissed.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART as follows:

• With respect to the 42 U.S.C. § 1983 claims brought against Officer McFarland and Burba, in their individual and official capacities, (1) the excessive force claims under the Fourth Amendment and Eighth Amendment are dismissed with prejudice but the excessive force claim under the Fourteenth Amendment remains; (2) the wrongful arrest claims under the Fourth Amendment are dismissed with prejudice; and (3) the deliberate indifference claims under the Fourteenth Amendment are dismissed with prejudice. The Court will address the remaining official capacities claims when it rules on Defendants Mark Bolton and Louisville Metro Government's motion for summary judgment.

• All state claims against Officers McFarland and Burba in their official capacities, are dismissed with prejudice.

• With respect to the state law claims brought against Officers McFarland and Burba, in their individual capacities, the following counts are dismissed as to both officers: intentional

infliction of emotion distress (Count Four), negligent infliction of emotional distress (Count Five), false imprisonment (Counts Nine and Ten), malicious prosecution (Count Thirteen), and abuse of process (Count Fourteen).  The following counts remain as to both Officers: negligence per se (Count Three), battery (Count Seven) and assault (Count Eight).

cc:     Counsel of Record