UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-00011-H

WILLIAM SCHERZINGER,                                                                        PLAINTIFF

V.

MARK BOLTON, ET AL.,                                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, William Scherzinger's action against Defendants arises from an incident that occurred in the booking room of the Louisville/Jefferson County Metro Corrections facility. Plaintiff advances a number of federal claims under 42 U.S.C. § 1983 and state law claims against the following Defendants: Louisville/Jefferson County Metro Government ("Metro Government"), Mark Bolton, William McFarland, Jason Burba, Michelle Doane[1] and John/Jane Does 1-15.[2] This Court recently rendered a Memorandum Opinion and Order addressing Officers McFarland and Burba's motions for summary judgment (the "McFarland and Burba Opinion") that disposed of some claims against them. *See* ECF No. 67. Presently, the Court will address Metro Government and Bolton's joint motion for summary judgment.

---

[1] Pursuant to Federal Rule of Civil Procedure 41, Plaintiff voluntarily dismissed all claims against Officer Doane with prejudice. ECF No. 24.

[2] In Plaintiff's January 6, 2011 Complaint, he sued John/Jane Does 1-15 for injuries he sustained from the booking floor incident. Plaintiff never amended his Complaint to provide the actual names and identities of the 15 John/Jane Does. At this time, the Court would likely not permit relation back of such an amendment under Federal Rule of Civil Procedure 15(c)(3) so as to save the claims, because Plaintiff lacked knowledge of the proper party and Rule 15(c)(3) is only applicable when there has been an error concerning the identity of the proper party. Accordingly, these claims are now time-barred by Kentucky's one year statute of limitations for personal injury actions, KRS § 413.140(1)(a), and the Court dismisses all claims against these unnamed parties.

I.

This decision addresses the alleged actions and inactions of Metro Government and Bolton, the Director of the Louisville Metro Department of Corrections ("Department of Corrections"), in light of the booking floor altercation. In the McFarland and Burba Opinion, this Court detailed the January 6, 2010 booking floor incident, including subsequent events that concerned Plaintiff's wrongful arrest claim. *See* ECF No. 67, at 1-4. The Court incorporates that fact section herein. Now, the Court will briefly summarize the pertinent facts relative to Plaintiff's claims against Metro Government and Bolton.

Following the incident, Bolton initiated a Professional Standards investigation to determine whether Officers McFarland and Burba's conduct was consistent with the Department of Correction's Use of Force Policy. That Policy defines the "one plus one" protocol, which dictates the permissible amount of force that an officer may use in response to a given level of inmate resistance. As the level of inmate resistance increases, the level of force a corrections officer is permitted to use in response increases. *See* Use of Force Policy, ECF No. 65-3, at 11.

After the investigation, Bolton fired Officers McFarland and Burba, finding that the force used against Plaintiff during the incident was improper and not consistent with the Use of Force Policy. The Officers appealed this decision, seeking re-employment through arbitration. Officers McFarland and Burba argued that their conduct complied with the "one plus one" protocol, and as such, they did not act improperly. Bolton defended his termination decision but ultimately, the arbitrator disagreed and reinstated the Officers.

Plaintiff has advanced federal and state law claims against Metro Government and Bolton, in his individual capacity and official capacity as Director of the Department of Corrections. Specifically, Plaintiff's federal claims allege violations of his Fourth, Eighth and

Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983. Plaintiff asserts state law claims of negligence, intentional and negligent infliction of emotional distress, and respondeat superior.

II.

The McFarland and Burba Opinion affects some of the issues presently before the Court. In that Opinion, this Court determined that Plaintiff failed to make out a constitutional violation with respect to his excessive force claims under the Fourth and Eighth Amendment, wrongful arrest claim under the Fourth Amendment, and deliberate indifference claim under the Fourteenth Amendment. As this Court noted, "[t]hose findings have implications for the official capacity claims, as the failure to make out a constitutional violation precludes Plaintiff from meeting the first prong of federal municipal liability." ECF No. 67, at 22. Accordingly, to the extent that Plaintiff asserts § 1983 claims against Metro Government and Bolton predicated on the aforementioned constitutional violations, those claims are dismissed as a matter of law. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (holding that the first step in the analysis of a § 1983 claim is to determine "whether plaintiff's harm was caused by a constitutional violation," and if not, the claim must fail). With respect to the state law causes of action, this Court dismissed Plaintiff's claims of intentional and negligent infliction of emotional distress against all Defendants. *See* ECF No. 67, at 17. Thus, the Court need only address the remaining federal law claim of excessive force under the Fourteenth Amendment and state law claims of negligence and respondeat superior in this decision.

Metro Government and Bolton move for summary judgment on all remaining claims. The Court will grant summary judgment where "the movant shows that there is no genuine issue as to any material fact or that the nonmoving party cannot prove an essential element of its case for which it has the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once accomplished, the nonmoving party can overcome summary judgment by controverting the moving party's argument with specific facts. *Matsushita Electrical Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court need not accept unsupported or conclusory allegations. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). However, the Court will view the record evidence in the light most favorable to Plaintiff. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 339 (6th Cir. 2010).

When a party moves for summary judgment based on the affirmative defense of qualified immunity,

> the existence of a disputed, material fact does not necessarily preclude summary judgment. Even if there is a material fact in dispute, summary judgment is appropriate if the Court finds that—viewing the facts in the light most favorable to the plaintiff—the plaintiff has failed to establish a violation of clearly established constitutional law.

*Woosley v. City of Paris*, 591 F. Supp. 2d 913, 918 (E.D. Ky. 2008) (citing *Saucier v. Katz*, 533 U.S. 194 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)).

The Court will address the remaining claims against Metro Government and Bolton in what it perceives to be the most logical order: 1) the state law claims against Metro Government and Bolton in his official capacity, 2) the state law claims against Bolton in his individual capacity, 3) the federal law claims against Metro Government and Bolton in his official capacity and, 4) the federal law claims against Bolton in his individual capacity.

III.

The Court will first address the state law claims against Metro Government and Bolton in his official capacity as Director of the Department of Corrections. Metro Government and Bolton argue that the doctrine of sovereign immunity bars all of Plaintiff's state law claims.

It is well-settled that Metro Government, a consolidated local government is entitled to sovereign immunity as to Plaintiff's state law claims. Kentucky law clearly provides that "[a] consolidated local government shall be accorded the same sovereign immunity granted [to] counties, their agencies, officers and employees." K.R.S. § 67C.101(2)(e).

Similarly, the doctrine of sovereign immunity shields Bolton from state law claims asserted against him in his official capacity as Director of the Department of Corrections. As the Kentucky Supreme Court directs, "If a state agency is deemed to have governmental immunity, its officers or employees have official immunity when they are sued in their official or representative capacity. The immunity that an agency enjoys is extended to the official acts of its officers and employees." *Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 717 (Ky. 2007). Though the Department of Corrections, the agency that employs Bolton, is not a party to this action, it would most certainly be afforded sovereign immunity.[3] Kentucky law provides that "[a] state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function." *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). Metro Department performs an important governmental function of supervising the incarceration of individuals charged with or convicted of crimes. *See Stewart v. Prison Health Servs.*, 2008 WL 237305, *2 (W.D. Ky. Jan. 28, 2008) (noting that the correctional operations of a metropolitan government is entitled to sovereign immunity because it is "one of the departments" of the government). As such, Bolton is similarly immune from the state law claims asserted against him in his official capacity.

---

[3] Some courts have ultimately held that Bolton is an employee of the Metro Government. *See Mason v. Doe No. 1*, 2013 WL 1152029, *4 (W.D. Ky. Mar. 19, 2013) ("Suing Defendant Bolton in his official capacity is the equivalent of suing his employer, the Louisville Metro Government."). Making such a determination is unnecessary since the Court reached the same result whether one deems Bolton an employee of the Department of Corrections or Metro Government.

5

IV.

Next the Court will evaluate Plaintiff's state law claims advanced against Bolton in his individual capacity. Plaintiff alleges that Bolton was negligent in his failure to properly train, supervise, investigate and discipline Officers McFarland and Burba, and that he should be held liable under a respondeat superior theory.[4] Bolton argues that the doctrine of qualified immunity absolves him from liability, or in the alternative that Plaintiff has failed to present a genuine issue of material fact and cannot satisfy the elements of his claims so as to hold Bolton accountable for any of the asserted theories of liability.

In Kentucky, public employees are entitled to qualified immunity from tort liability for "good faith judgment calls made in a legally uncertain environment." *Yanero*, 65 S.W.3d at 522. Bolton enjoys qualified official immunity for 1) discretionary acts 2) performed in good faith and 3) within the scope of his authority. *Id*. Bolton easily establishes the first and third prongs.

A discretionary act is one involving the exercise of personal judgment and discretion; by contrast, a ministerial act is one that is "absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* As Director the Department of Corrections, Bolton acts in a supervisory capacity, a function that Kentucky courts have held to be a discretionary. *See Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 480-81 (Ky. 2006) (holding that deputy jailer's act of supervising inmates was discretionary). Additionally, the Court is satisfied that Bolton has met the third element of the state law qualified immunity

---

[4] Given a liberal reading of Plaintiff's Complaint, he also appears to assert the respondeat superior claim against Metro Government and Bolton in his individual and official capacities. The claim must fail as against Metro Government because "[a] municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978). Similarly, the claim as asserted against Bolton in his official capacity must be dismissed. *See White v. Deghetto*, 2010 WL 5419056, *7 n.5 (W.D. Ky. Dec. 23, 2010) (holding that official capacity claims "against supervisors for respondeat superior are generally dismissed under many statutory schemes encompassing respondeat superior") (quoting *Cabinet for Families & Children v. Cummings*, 163 S.W.3d 425, 434-44 (Ky. 2005)).

analysis, as the claims lodged against him involve actions taken within the scope of his authority as Director of the Department of Corrections.

Therefore, the remaining issue is whether Bolton performed the actions in good faith. Plaintiff bears the burden to prove that Bolton did not perform the discretionary action in good faith. *Yanero*, 65 S.W.3d at 523. "Bad faith exists if either a public employee violated a constitutional, statutory, or other clearly established right of which a reasonable person would have known or if the public employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Woosley*, 591 F. Supp. 2d at 922 (internal quotations omitted).

Plaintiff has failed to proffer any evidence that Bolton acted with deliberate indifference or malicious intent in his actions as Director of the Department of Corrections. Rather, the record reflects that Bolton employed appropriate and reasonable means of training, supervising, investigating and disciplining the Department of Corrections' officers. Bolton trains officers according to the Use of Force Policy, and as evidenced in the present case, he will take appropriate disciplinary measures if an officer's conduct is found to be improper. Plaintiff offers no affirmative evidence to the contrary. Bolton's actions fall quite short of demonstrating deliberate indifference or malicious intent so as to infer that he did not act in good faith.

The Court finds that Bolton has met all three prongs of the qualified immunity inquiry, and as a result, he is entitled to qualified immunity as to the state law claims asserted against him in his individual capacity.

V.

The Court will now turn to the remaining constitutional claim against Metro Government, Bolton, and Officers McFarland and Burba, sued in their official capacities.[5] As a threshold

---

[5] With respect to Officers McFarland and Burba, the two other remaining defendants in this action, this Court previously held in the McFarland and Burba Opinion

7

matter, "[s]uing a government employee in his official capacity 'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" *Baar v. Jefferson Cnty. Bd. of Educ.*, 686 F. Supp. 2d 699, 704 (W.D. Ky. 2010) (quoting *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985)). Our courts will dismiss official capacity claims when the governmental entity of which the officers are agents is a party to the action, as is the case here. *Id.; see Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent.").

In evaluating a § 1983 claim against a municipality, courts must analyze two distinct issues: 1) whether a constitutional violation caused plaintiff's harm, and 2) if so, whether the municipality is reasonable for that constitutional violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). In the McFarland and Burba Opinion, the Court did not dismiss Plaintiff's excessive force claim premised on a violation of the Fourteenth Amendment, finding that genuine issues of material fact existed concerning whether Officers McFarland and Burba intended their actions to punish Plaintiff. It follows that Plaintiff has, at the very least, created a factual issue as to whether a constitutional violated caused his harm, thus meeting the first prong of a § 1983 claim against a municipality.

Turning to the second issue, in order to hold a municipality responsible for an alleged constitutional deprivation, Plaintiff must establish a direct causal link between a municipal policy or custom and the deprivation. *Monell*, 436 U.S. at 691. To demonstrate this causal link, plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the

---

As to the remaining constitutional claim of excessive force that survived dismissal, the Court will take up that claim as it pertains to Officers McFarland and Burba in their official capacities when the Court rules on Louisville/Jefferson County Metro Government's motion for summary judgment. *See Wiley v. Chauvin*, 2009 WL 2244698, *3 (W.D. Ky. July 24, 2009).

ECF No. 67, at 22. Accordingly, the Court will now address the remaining federal official capacity claims brought against Officers McFarland and Burba.

municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire*, 330 F.3d at 815 (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).

The first two elements are easily met since Plaintiff alleges that Officers McFarland and Burba acted pursuant to the Department of Correction's Use of Force Policy during the incident at issue. With respect to the third element, Plaintiff cannot establish he incurred his injury due to the execution of that policy. *See Garner*, 8 F.3d at 364 (internal quotation omitted). The Department of Correction's Use of Force Policy certainly does not condone excessive force, but rather constrains the amount of force an officer may use so that it can never be reasonably perceived as excessive. *See* Use of Force Policy, ECF No. 65-3, at 3 (directing that "[a]ny use of physical force must be reasonable and necessary" and "[i]f physical force becomes necessary, only the minimum amount of physical force required shall be used to control any situation"). Specifically, since the "one plus one" protocol permits an officer to use a level of force that it is only one level higher than that used by the inmate, the relative force applied cannot be deemed excessive.[6] Plaintiff has failed to demonstrate an official policy that caused the alleged constitutional violation and as a result, Metro Government is entitled to summary judgment on Plaintiff's § 1983 claim against the municipality.

---

[6] In Officer Burba's reply in support of his motion for summary judgment, ECF No. 63, he applies the "one plus one" protocol to the incident at issue. Plaintiff's refusal to stand after the Officers asked him to do so constituted a form of Passive Resistance, which according to the Use of Force Policy permitted the Officers to use a "soft empty hand." They did so in an attempt to lift Plaintiff. They contend that Plaintiff responded by pulling them toward him, a form of Defensive Resistance. At that point, the Officers were authorized to use a "hard empty hand." As a result of Plaintiff's Defensive Resistance, the Officers contend they were justified in using hard empty hand strikes.

In the alternative, Plaintiff seems to argue that it is the Department of Corrections' unofficial custom to permit officers to exceed the force prescribed in the Use of Force Policy. Accordingly, the Court must determine whether the Department of Corrections, and thus Metro Government, maintained an unofficial custom permitting the use of excessive force. In this context, the Sixth Circuit directs that

> [a] "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." . . . In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy." . . . It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 507-08 (6th Cir. 1996) (internal citations omitted). Further, the Supreme Court instructs that,

> [p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

In his complaint, Plaintiff alleges that unlawful conduct similar to that inflicted against him was widespread in the Department of Corrections. However, he does not provide any evidence to support such a conclusory accusation. Rather, he merely argues that the Officers used excessive force against him during the specific incident at issue. As dictated above, a single, isolated act cannot establish that the municipality harbored a pervasive, continued and unwritten custom. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005)

(holding that "one instance of potential misconduct" cannot "infer a municipal-wide policy," because doing so "would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard," which is expressly "forbidden by the Supreme Court").

For the foregoing reasons the § 1983 claims against Metro Government and all remaining Defendants in their official capacities fail as a matter of law. *See Monell*, 436 U.S. at 690-91.[7]

VI.

Finally, the Court will analyze the § 1983 claim against Bolton in his individual capacity. Plaintiff alleges that Bolton's failure to properly and adequately train and supervise the offending Officers laid the foundation for the application of excessive force against Plaintiff.

In § 1983 actions, the doctrine of respondeat superior does not operate to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *see Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (stating that "officials are liable for damages under [§ 1983] only for their own unconstitutional behavior") (internal quotation omitted). Thus, the "failure of a supervisory official to supervise, control, or train the offending officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some way directly participated in it. *Hays v. Jefferson Cnty., Ky*., 668 F.2d 869, 874 (6th Cir. 1982); *see Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir. 2003) (noting that "simple awareness of employees' misconduct does not lead to supervisor liability") (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 176, 728 (6th Cir. 1996)). At a minimum "a plaintiff must show that the official at least

---

[7] Additionally, Plaintiff generally alleges in his complaint that "Defendants' failure to prevent and remedy assault, harassment, battery, false imprisonment, degrading treatment and privacy violations by Defendants and employees of Defendants upon the Plaintiff, constitutes an official policy, custom, pattern or practice." ECF No. 1, at ¶ 37. Plaintiff has failed to provide any evidence that such an official policy exists. Additionally, the facts of the case defeat the assertion that the Department of Corrections adopted such a custom or pattern of behavior. Shortly after the incident, Bolton initiated an investigation into the incident and concluded that the Officers' conduct was not consistent with the Use of Force Policy and training. He imposed severe disciplinary measures in response. Accordingly, Plaintiff fails to establish that the Department of Corrections has a policy, custom, pattern or practice to prevent and remedy improper use of force incidents.

implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officer." *Id.*

The Sixth Circuit directs that a plaintiff may maintain a failure to train or supervise claim when he proves the following: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury*." Ellis* ex rel. *Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Plaintiff has produced no proof that Bolton endorsed a policy or custom of deliberate indifference in training Department of Corrections officers, or that any training was inadequate. Rather, Bolton directs and trains officers to follow the tenets of the Use of Force Policy, including the "one plus one" protocol that inherently prohibits the use of excessive force. Bolton testified that new recruits of the Department of Corrections are trained on this policy and "during the course of employment emphasis is placed on various aspects of inmate interaction in an effort to avoid the use of physical force." ECF No. 65-2, at 2. The fact that Bolton investigated the incident shortly after it occurred and imposed the harshest disciplinary action available, demonstrates that he strictly enforces the Use of Force Policy and will not tolerate any conduct that is not consistent with it.

Accordingly, the Court finds that Plaintiff has failed to make out an actionable § 1983 claim against Bolton in his individual capacity.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants Metro Government and Mark Bolton's motion for summary judgment [ECF No. 36] is SUSTAINED. All claims against them are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that all claims against John/Jane Does 1-15 are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the remaining 42 U.S.C. § 1983 claim against Officers McFarland and Burba in their official capacities is DISMISSED. What remains in this action is the 42 U.S.C. § 1983 claim brought against Officers McFarland and Burba in their individual capacities, premised on the use of excessive force in violation of the Fourteenth Amendment, and the following state law claims brought against Officers McFarland and Burba in their individual capacities: negligence per se (Count Three), battery (Count Seven) and assault (Count Eight).

The Court will set a conference in this near future to discuss a trial date and other matters relevant to resolving this case.

cc:   Counsel of Record